Clifford S. Davidson, OSB No. 125378
csdavidson@swlaw.com
SNELL & WILMER L.L.P.
601 SW 2nd Avenue
Suite 2000
Portland, Oregon  97204-3229
Telephone:  503.624.6800
Facsimile:  503.624.6888
Attorneys for Plaintiff James Blair

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| JAMES BLAIR, a Canadian citizen, <br><br>      Plaintiff, <br><br>vs. <br><br> MICHAEL E. JOHNSTON, an Oregon citizen; WINTERHAWKS HOCKEY, LLC, a Delaware limited liability company, <br><br>      Defendants. | Case No. 3: 24-cv-00548 <br><br> COMPLAINT FOR INTERFERENCE WITH ECONOMIC RELATIONS AND FOR DEFAMATION |

      Plaintiff James Blair, former VP of Finance for the Winterhawks, sues because Michael E. Johnston, the Winterhawks' General Manager, called Blair's employer in Canada for the purpose of getting him fired. Johnston was convinced that Blair had embezzled from the Winterhawks—notwithstanding documentation to the contrary and despite approval by Winterhawks personnel of the transactions Johnston thought showed embezzlement. Johnston falsely told Blair's post-Winterhawks employer that he'd made "fraudulent expense claims" and shared parts of Blair's Winterhawks personnel file. Johnston's acts caused Plaintiff to be terminated. Plaintiff sues for the resulting diminution in earning potential, reputational harm, and severe emotional distress Defendants caused him.

## JURISDICTION AND VENUE

1. The Court has jurisdiction pursuant to 28 U.S.C. § 1332(a). Plaintiff is a Canadian citizen. To Plaintiff's knowledge, defendant Johnston is an Oregon or Washington citizen, and Winterhawks Hockey, LLC, is a citizen of Delaware (state of incorporation), Oregon (where it operates the Portland Winterhawks team), or New York (which is listed as its principal place of business). Plaintiff is informed and believes, and based on such information and belief alleges, that no member of Winterhawks Hockey, LLC, is a foreign citizen. And as alleged below, over $75,000 USD is in controversy.

2. This Court has personal jurisdiction. Johnston is a citizen of either Oregon or Washington (he appears to own property in both states), and in any event, he regularly conducts business in Oregon such that suing him in this District comports with Oregon's long-arm statute and the United States Constitution. Likewise, Winterhawks Hockey, LLC operates the Portland Winterhawks in Portland and regularly conducts business in this District.

3. This Court is the correct venue because, as described below, a substantial part of the events or omissions giving rise to this action occurred in this District. The Portland Division is the appropriate divisional venue because a substantial part of the events or omissions giving rise to this action occurred in Multnomah County.

## PARTIES

4. Plaintiff James Blair is a Canadian citizen residing in Vancouver, British Columbia, Canada. From December 2021 to May 2023, defendant Winterhawks Hockey, LLC employed Blair as Senior Director, Finance and promoted him to Vice President of Finance & Administration.

5. Defendant Michael E. Johnston is President and General Manager of the Portland

Winterhawks. Plaintiff is informed and believes, and based on such information and belief alleges, that Defendant Mike Johnston is domiciled in Multnomah County, Oregon, or Blaine, Washington.

6. Defendant Winterhawks Hockey, LLC is a Delaware limited liability company. According to its filings with the Oregon Secretary of State, Winterhawks Hockey, LLC has its principal place of business in New York City. Winterhawks Hockey, LLC operates the Portland Winterhawks, located in Portland, Oregon. For the sake of efficiency, this Complaint will use "the Winterhawks" to refer to Winterhawks Hockey, LLC.

## FACTUAL BACKGROUND

7. Blair is a Chartered Professional Accountant, the Canadian equivalent of a Certified Public Accountant in the United States. He has held that credential since 2011. He holds a bachelor's degree in business administration and a Master of Business Administration. Since 2011 and until the events giving rise to this lawsuit, he has held senior positions relating to finance, accounting, and administration.

8. On December 1, 2021, Blair began his employment as Senior Director, Finance, for the Winterhawks. Blair was an at-will employee.

9. In October 2022, Blair requested a pay advance to pay property taxes on his personal residence in Oregon (the "Advance"). Kerry Preete, minority owner of the Winterhawks, approved the Advance, though Blair did not receive the approval in writing. Blair documented his repayments of the Advance and transactions relating to it.

10. From approximately July 2022 to February 14, 2023, Blair loaned Canadian dollars to the Winterhawks so that they could pay Canadian vendors (the "Loan") because the Winterhawks did not have access to sufficient Canadian funds. The Chief Marketing Officer of

the Winterhawks, Jeff McGillis, was aware of the Loan and Blair documented it.

11. In May 2023, the Winterhawks terminated Blair's at-will employment. At that time, the Winterhawks did not provide a reason for the termination.

12. Upon termination, Blair returned to Vancouver, British Columbia, Canada. There, he became Director of Finance and Administration at Creative BC Society. In that position, he earned a salary and pension of $141,157 CAD, or approximately $104,138 USD, plus bonus.

13. Beginning in July 2023, representatives of the Winterhawks began to contact Blair about the Advance and the Loan, which they described as "embezzlement."

14. In response to the Winterhawks' accusations, Blair provided the documentation he had maintained concerning the Advance and the Loan. But the Winterhawks did not relent.

15. The parties lawyered up. In August and September 2023, Blair's counsel and counsel to the Winterhawks corresponded concerning the accusations.

16. But even though the parties were in negotiations and attempting to address the Winterhawks' inquiries about the Advance and Loan, on November 17, 2023, defendant Johnston contacted Blair's employer, Creative BC Society, and accused Blair of "fraudulent expense claims." Johnston also sent to Creative BC portions of Blair's personnel file.

17. Blair is informed and believes, and based on that information and belief alleges, that Johnston and the Winterhawks contacted Creative BC out of the blue, not at Creative BC's request, and for the specific purpose of causing Blair to be terminated and damaging his reputation.

18. On November 24, 2024, Creative BC terminated Blair's employment because of Defendants' interference and defamation.

19. Blair was able to find a new job approximately two months after his termination,

but that job pays approximately $41,000 CAD less per year (approximately $30,247 USD). Blair's new job is not a senior finance position, and he doubts he ever will be able to obtain another senior finance position given the accusation of fraud or embezzlement.

20. Blair is informed and believes, and based on such information and belief alleges, that approximately $41,000 CAD per year is a good measure of the difference between a senior position in his field and a more junior position in his field, in the Vancouver, British Columbia market.

21. Prior to Defendants' unlawful acts, Blair had anticipated working another 10 years or so before retiring. He now likely will need to work longer.

## FIRST CLAIM FOR RELIEF

(Intentional interference with economic relations)

Against both Defendants

22. Blair incorporates and realleges the foregoing paragraphs as though set forth here in full.

23. Blair had a professional relationship with Creative BC Society as of November 2023, which ended on November 24, 2023 because of Defendants' interference with that relationship.

24. As alleged above, Defendants intentionally interfered with that relationship.

25. Plaintiff is informed and believes, and based on that information and belief alleges, that when he called Creative BC Society in November 2023, Johnston acted within the course and scope of his position with the Winterhawks or did so with its approval or ratification.

26. Defendants were not parties to the relationship between Blair and Creative BC Society.

27. Defendants interfered for the purpose of getting Blair fired. That is, they interfered for an improper purpose. Moreover, they did so in the middle of conversations between counsel concerning the Advance, the Loan, and the Winterhawks' accounting records (such as they were)—further evidence of malicious purpose.

28. Creative BC Society informed Blair that Johnston's call was the reason Blair was terminated. On this basis, Blair alleges that Defendants' conduct caused the interference.

29. Blair has suffered economic damages in an amount according to proof at trial but not less than $437,145 CAD or its Unites States Dollar equivalent, which currently is approximately $322,794 USD. That amount comprises (a) the difference in pay between the senior position at Creative BC Society with which Defendants interfered, and what Blair earns now in a more a junior position, multiplied by the ten years additional years Blair had planned to work prior to retirement ($410,000 CAD); and (b) Blair's lost wages during the several months he was unemployed after Creative BC Society terminated him ($27,145 CAD).

30. Blair has suffered noneconomic damages in the form of severe emotional distress marked by insomnia, worry, and anxiety, in an amount according to proof at trial.

## SECOND CLAIM FOR RELIEF

(Defamation)

Against both Defendants

31. Blair incorporates and realleges paragraphs 1 through 21 as though set forth here in full.

32. Plaintiff is informed and believes, and based on that information and belief alleges, that when Johnston called Creative BC Society on November 17, 2023, he acted within the course and scope of his position with the Winterhawks or did so with its approval or

ratification.

33. Defendants made a defamatory statement about Blair to Blair's employer: that he had submitted "fraudulent expense claims." The statement was false and tended to diminish esteem, respect, goodwill toward, or confidence in, Blair—who held a senior position related to finance, and who consistently had held senior positions previously. The statement tended to excite adverse, derogatory, or unpleasant feelings or opinions against Blair. For starters, Creative BC Society fired him based on Defendants' statement.

34. Defendants published the defamatory statement to at least one third party: Creative BC Society.

35. Defendants' statement was defamatory *per se*. It tended to injure Blaire in his business or profession. It also imputed moral turpitude or criminal conduct (that Blaire is a fraudster, embezzler, or thief). Blaire thus need not prove special damages.

36. But even though he need not prove special damages, he can do so as alleged above in paragraphs 29 (economic damages) and 30 (non-economic damages).

WHEREFORE, plaintiff James Blair prays for Judgment against Defendants as follows:

A. For economic damages in an amount according to proof at trial, but not less than $437,145 CAD, or its equivalent in United States dollars;

B. For non-economic damages in an amount according to proof at trial;

C. For an injunction against further statements to third parties that Blaire submitted fraudulent reimbursements or embezzled money from the Winterhawks (or words to that effect);

D. For prejudgment interest running from November 24, 2023—the date on which Creative BC Society terminated him; and

E.    For such other and further relief that the Court deems necessary or just.

DATED this 31st day of March, 2024.

> SNELL & WILMER L.L.P.
>
> /s/ Clifford S. Davidson
> Clifford S. Davidson, OSB No. 125378
>
> Attorneys for Plaintiff James Blair

4863-3350-4690